**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KARO BROWN,**

                      **Plaintiff,**                      **9:07-cv-1169
                                                                               (GLS/GHL)**

                              **v.**

**ROBERT OUTHOUSE,** Sheriff, Cayuga County; **C.O. WALBORN,** Correctional Officer, Cayuga County Jail; **JOHN DOES,** Correctional Officers, Cayuga County Jail,

                                  **Defendants**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Karo Brown
Pro Se
58105-066
Canaan-U.S. Penitentiary
Inmate Mail/Parcels
P.O. BOX 300
Waymart, PA 18472

**FOR THE DEFENDANTS:**
Office of Frank W. Miller          FRANK W. MILLER, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057

Mackenzie, Hughes Law Firm     MICHAEL J. LIVOLSI, ESQ.
101 South Salina Street
PO Box 4967
Syracuse, NY 13221-4967

**Gary L. Sharpe
District Court Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Pro se plaintiff Karo Brown brings this action under 42 U.S.C. § 1983 alleging violations of his rights under the United States Constitution and New York State law. (Dkt. No. 1.) In a Report-Recommendation and Order (R&R) filed July 9, 2010, Magistrate Judge George H. Lowe recommended that defendants' motion for summary judgment be granted.[1] (Dkt. No. 51.) Pending are Brown's objections to the R&R. (Dkt. No. 52.) For the following reasons, the R&R is adopted in its entirety.

### **II. Background**

**A.  Factual History**

On November 15, 2004, while detained at Cayuga County Jail, plaintiff Karo Brown was restrained and handcuffed by defendant Scott Walborn after violating a facility rule and allegedly acting in a verbally combative and hostile manner. (*See* R&R at 2-6, Dkt. No. 51.) Immediately following the incident, Brown was placed in segregated housing (RHU), where he requested medical attention. (*See id.* at 6.) The

---

[1]The Clerk is directed to append the R&R to this decision, and familiarity therewith is presumed.

2

next day, Brown was personally examined by Jackie Chadwick, a registered nurse employed at the Cayuga County Jail. (*See id.*) Upon examination, Nurse Chadwick observed that Brown "did not complain of intense pain or discomfort," and concluded that "Brown displayed only superficial injuries[, which] needed no treatment ... other than continued observation."[2] (Defs. Mem. of Law, Chadwick Aff. ¶¶ 10-11, Dkt. No. 39:3.) On December 14, 2004, Brown was again brought to the infirmary, this time complaining of a dislocated shoulder that he claimed was caused by the November altercation. (*See id.* at ¶ 13.) Again, however, the examining physician found no serious injury, observing that Brown's "left shoulder exhibited a full range of movement," and "prescrib[ing] only Advil as needed for discomfort." (*Id.*)

As a result of the November 15 incident, Brown received a misbehavior report and was required to appear at a disciplinary hearing. (*See* R&R at 7-8, Dkt. No. 151.) However, Brown was given no prior notice of the hearing and was not permitted to call other prisoners to testify as

---

[2] More specifically, Nurse Chadwick noted that Brown suffered a small abrasion over his right eye, a very small scratch on his wrist, a small scratch on his left upper inner arm, a small scratch on the back of his neck, and minimal jaw swelling. (Defs. Mem. of Law, Chadwick Aff. ¶¶ 7-9, Dkt. No. 39:3.)

eyewitnesses.  (*Id.* at 8.)  Following the hearing, Brown was kept in RHU for sixty to ninety days.  (*Id.*)

## B. Procedural History

On November 2, 2009, Brown filed the present action, alleging that defendants violated his rights under the United States Constitution and New York State law by: (1) using excessive force against him; (2) denying him adequate medical care; and (3) denying him due process during his disciplinary hearing.  (*See* Compl., Dkt. No. 1.)  On June 10, 2009, Brown's state law claims and his medical care claim against defendant Walborn were dismissed, leaving in tact Brown's claims for excessive force and denial of procedural due process against Walborn, and his medical care claim against defendant Robert Outhouse, then Sheriff of Cayuga County.  (*See* Dkt. No. 27.)  On January 11, 2010, defendants moved for summary judgment on Brown's remaining claims.  (Dkt. No. 39.)  On July 9, 2010, Judge Lowe recommended that defendants motion be granted and that Brown's complaint be dismissed.  (Dkt. No. 51.)  Pending are Brown's objections to the R&R.  (Dkt. No. 52.)

## III. Standard of Review

Before entering final judgment, this court routinely reviews all report

4

and recommendation orders in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations de novo. *See Almonte v. N.Y. State Div. of Parole*, No. 04-cv-484, 2006 WL 149049, at *6-7 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, or only a vague or general objection has been filed, this court reviews the findings and recommendations of a magistrate judge for clear error. *See id.*

## IV. Discussion

### A. Excessive Force

Brown claims that defendant Walborn used excessive force against him during the November 15 incident. (*See* Pl. Objections at 1-3, Dkt. No. 52.) When prison officials are "accused of using excessive physical force ... the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (U.S. 1992).

In this case, based on his viewing of security video footage of the November 15 incident, Judge Lowe recommended the dismissal of Brown's excessive force claim, finding that "no reasonable juror could conclude that

5

... Walborn acted maliciously and sadistically to cause harm." (R&R at 16, Dkt. No. 51.) In drawing this conclusion, Judge Lowe highlighted that the entire incident lasted less than a minute, that Brown admits that he was violating a facility rule, that Walborn never struck or kicked Brown, and that the force lasted only long enough to place handcuffs on Brown and bring him to his feet. (*Id.*) Based on these facts, Judge Lowe concluded that "Walborn used no more than *de minimis* force and that the force he used was not of a type repugnant to the conscience of mankind." (*Id.* at 16.)

Having reviewed this portion of the R&R de novo, and having viewed the security video footage, the court concurs with Judge Lowe's findings and conclusion and adopts the R&R's recommendation to dismiss Brown's claim for excessive force.

## B. Procedural Due Process

Brown claims that he was deprived of procedural due process because he received no prior notice of his disciplinary hearing and was not allowed to call witnesses at the hearing. (*See* Pl. Objections at 4-5, Dkt. No. 52.)

To succeed on a procedural due process claim, a plaintiff must show that he was deprived of a "property or liberty interest protected by the

6

Constitution." *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988). As explained in the R&R, "[a]n inmate has a liberty interest in remaining free from a confinement or restraint where ... [that] confinement or restraint 'imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (R&R at 17, Dkt. No. 51 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).) In the Second Circuit, where, as here, a prisoner has served fewer than 101 days in disciplinary segregation, the confinement amounts to "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions." *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004).

Here, in recommending the dismissal of Brown's due process claim, Judge Lowe found the record to be devoid of any evidence or indication that the conditions in RHU were more severe than normal SHU conditions, and thus concluded that Brown was not deprived of any liberty interest. (*See* R&R at 18, Dkt. No. 51.) Brown's sole challenge to this finding is that "[his] confinement in R.H.U. was atypical and significant hardship [because he] was confined from November 2004 until March of 2005 in which was 120 days, over the 101 days in *Palmer*." (Pl. Objections at 5, Dkt. No. 52.)

7

This argument is without merit.

Initially, the basis of Brown's assertion—that he was confined for 120 days—belies his prior, consistent contentions that his confinement lasted for a period of between sixty and ninety days. (*See* Compl. ¶ 23, Dkt. No. 1 (alleging segregation lasting "a couple of months"); Compl., Ex. A, Karo Dep. at 33 ("two or three months"); Pl. Response at 8, Dkt. No. 43 ("60 to 90 days").) Moreover, even if the court were to credit Brown's inconsistent allegation, his claim would nonetheless fail. The Second Circuit has "[made] clear that duration is not the only relevant factor" in assessing whether segregated confinement amounts to an "atypical and severe hardship." *See Palmer*, 364 F.3d at 64 (citation and internal quotation marks omitted). Rather, "[t]he conditions of confinement are a distinct and equally important consideration" in that assessment. *Ortiz v. McBride*, 323 F.3d 191, 195 (2d Cir. 2003). And in that regard, Brown has failed to allege or offer any evidence that his living conditions in RHU were harsher than typical SHU conditions, or even dispute defendants' showing that the conditions of RHU were largely similar to those of the general prison population. (*See* R&R at 18, Dkt. No. 51.) Therefore, because Brown has failed to even allege unusual confinement conditions, his due process claim

cannot survive. *See Barclay v. New York*, 477 F. Supp. 2d 546, 556 (N.D.N.Y. 2007) ("Where a plaintiff fails to 'demonstrate a significant deprivation of a liberty interest because he has not shown that the conditions of his confinement in the SHU were dramatically different from the 'basic conditions of his indeterminate sentence' his due process claim fails." (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996))).

Accordingly, upon de novo review, the court adopts Judge Lowe's recommendation to dismiss Brown's due process claim.

**C      Denial of Medical Care**

Brown claims that he was deliberately denied medical treatment for more than twenty-four hours after the November 15 incident. (*See* Pl. Objections at 3-4, Dkt. No. 52.)

"To establish an unconstitutional denial of medical care, a prisoner must prove deliberate indifference to his serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations and internal quotation marks omitted). Therefore, to succeed on his claim, Brown must show that he "had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and internal quotation marks omitted). "The objective

9

'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citations omitted).

In recommending the dismissal of Brown's deliberate indifference claim against Outhouse, Judge Lowe found that Brown failed to (1) establish the existence of a serious medical condition, or (2) raise a triable issue of fact that his condition was met with deliberate indifference. (R&R at 21, Dkt. No. 51.) Upon de novo review of these findings, the court concurs with Judge Lowe and adopts his recommendation to dismiss Brown's medical care claim.

A "serious medical condition" is "'a condition of urgency ... that may produce death, degeneration, or extreme pain.'" *Hathaway*, 37 F.3d at 66 (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). Factors relevant to the seriousness of a medical condition include: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain." *Chance v. Armstrong*,

10

143 F.3d 698, 702 (2d Cir. 1998) (citations and internal quotation marks omitted).

In this case, Brown's injuries were limited in nature and characterized by Nurse Chadwick as "superficial." Further, there is no evidence in the record, and Brown does not appear to allege, that his injuries caused him any chronic and substantial pain, or that they significantly affected his daily activities. Accordingly, discerning no error in Judge Lowe's application of the law to these and other relevant facts, the court concurs with Judge Lowe's conclusion that Brown's injuries were not sufficiently serious to satisfy the objective prong.

The court also agrees with Judge Lowe that, "[e]ven if [Brown] had sustained a sufficiently serious injury as a result of the incident," his claim would nonetheless fail on the subjective, deliberate indifference prong. (*See id.* at 21.) As Judge Lowe correctly explained, "[m]edical mistreatment rises to the level of deliberate indifference only when it 'involves culpable recklessness, i.e., an act or failure to act ... that evinces a conscious disregard of a substantial risk of serious harm.'" (*Id.* (quoting *Chance*, 143 F.3d at 703).) In other words, to satisfy the subjective prong, the plaintiff must show that the prison official "[knew] of and disregard[ed]

11

an excessive risk to inmate health or safety." *Hathaway*, 37 F.3d at 66 (citation and internal quotation marks omitted).

In this case, because the court agrees with Judge Lowe that "there is no evidence that either ... Outhouse or any medical care provider was aware of any facts from which the inference could be drawn that [Brown] had a serious medical need," (R&R at 21, Dkt. No. 51), the court finds no error in the R&R's finding as to deliberate indifference, or in its ultimate recommendation to dismiss Brown's medical care claim. Accordingly, the court adopts the portion of the R&R dismissing Brown's medical care claim.

## V. Conclusion

Having reviewed the remainder of the R&R for clear error, the court finds no error.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate George H. Lowe's Report-Recommendation and Order (Dkt. No. 51) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for summary judgment is **GRANTED** and Brown's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

September 27, 2010
Albany, New York

United States District Court Judge